# Tower & Ward *versus* O'Neil.

1. O. in writing authorized T. to sell his land within a time named, for $70,000 for a commission of 2 per cent.; before the time expired O. requested T. to deliver up the paper; T. said he would give the price himself rather than let the time run out. This offer was not in execution of the power of sale.

2. If the offer had been made in execution of the power O. was not bound to take it, and his refusal did not make him liable for commissions.

3. The parties were principal and agent, and could not be changed into vendor and vendee without O.'s consent.

4. T. was entitled only to compensation for his services.

October 31st 1870. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Allegheny county :* To October and November Term 1870, No. 115.

This was an action of assumpsit, to March Term 1866, by G. H. Tower and William Ward against James O'Neil. The action was founded on the following instrument:—

" I hereby authorize and empower G. H. Tower and William Ward to sell my coal property situated, &c., containing 240 acres, together with the following chattels, viz. * * * And agree to give said Ward & Tower ninety days from this date to accomplish said sale on the following terms, viz., for all the above-enumerated property the sum of $70,000, payable as follows, &c., * * * and agree to pay said Ward & Tower 2 per cent. commission, and

[Tower *v.* O'Neil.]

all over and above the said $70,000 that the said Tower & Ward may sell the same for, to be their additional commission, &c.

"JAMES O'NEIL."

"Pittsburg, August 23d 1864."

"I hereby agree to extend the time to Ward & Tower to sell the above-named property thirty days from this date.

"As witness my hand and seal, this 30th day of November, A. D. 1864.　　　　　"JAMES O'NEIL."

The plaintiffs gave evidence by John Ward, a son of one of them, that after the agreement the plaintiffs advertised the property, wrote and spoke to a number of persons about it, and made efforts generally to effect a sale. The defendant came into plaintiffs' office and wanted the agreement; said he could not think of selling until he got Mrs. Berry's interest; as soon as he got that, he would put it into plaintiffs' hands again, and give them the same terms, if not better. "Father said he would not give up the article of agreement, but he would take it at the contract price himself, rather than let the time run out. After pleading and talking for some time, he said as quick as he got Mrs. Berry's interest he would put the property back in their hands for sale; then father told me to hand him the article, which I did. * * * O'Neil paid Tower & Ward $200 for their services, for which I wrote a receipt. * * * O'Neil paid them $100 each. Father did not want to take any money from him at all until he got the whole thing consummated, and he wanted the whole of it then. The $100 each was for services. O'Neil told father and Tower that they had a good deal of trouble with this thing, and he wanted to pay them as far as they went, and paid them $100 apiece. * * * They said if he would extend the time thirty days longer they would give him $3000 more than his contract price. This was the day they came to get the contract up."

The receipt was:—

"Pittsburg, December 27th 1864.

"Received of O. P. Berry & Co., by the hand of James O'Neil, two hundred dollars for services rendered.

"WM. WARD,
"G. H. TOWER."

The court (Mellon, J.) charged:— * * *

"[It is claimed that the proposition of Mr. Ward, one of the plaintiffs, to take the property himself when (from defendant's eagerness to possess himself of the contract), he suspected the defendant intended to revoke their power, amounted to a sale of the property under the power, or what was equivalent to a sale. But I am of the opinion that this proposition of Mr. Ward cannot be so regarded. First, because the instrument under consideration does not contemplate a sale to the plaintiffs or either of them.

[Tower *v.* O'Neil.]

They were defendant's agents, and although their taking the property on the terms prescribed may be regarded as no detriment to the defendant, as he would not have fared better had they sold to a stranger, yet a percentage to them was provided which was inconsistent with a sale to themselves, and general policy would seem to deny, under such contract, the right of the agent to sell to himself.]

"But apart from this, it seems to me that Ward did not put himself in an attitude under the evidence to raise this question. He merely declared in effect that sooner than give up the contract he would take the property himself, or perhaps absolutely that he would take it himself, to which no response was definitely made by defendant.   Therefore plaintiff Ward ought to have followed up his proposition by showing his readiness to pay. * * *

"You can find for the plaintiffs only under three aspects of the evidence:

"1st. That the plaintiffs, before a revocation, had procured a purchaser who was prevented from consummating the bargain only by the revocation or some fault of the defendant.   In that case your finding would be for the plaintiffs, the same amount in all respects as if the sale had been fully consummated.

"2d. That defendant revoked the power, taking up the contract before the time limited.   In that case your finding for plaintiffs would be a fair compensation for their services, including any expenditures by them properly incurred.   But the defendant alleges payment for such services, and has produced a receipt purporting to be for $200 for such services.

"You are, in the third place, to inquire whether that receipt was obtained, or payment made to plaintiffs fraudulently, and they were induced to accept this amount under the assurance that the power was not revoked, but to be restored, and that otherwise a much larger sum would have been demanded, and the plaintiffs entitled to it for their services, instead of $200 paid them.   If you think they were thus imposed upon, and that they were entitled to a larger amount for their services, you will find the increase over the $200 in their favor, even if they had not procured a purchaser."

The verdict was for the defendant.

The plaintiffs took a writ of error, and assigned for error the part of the charge in brackets.

*Bruce & Negley* and *Kuhn & Cassidy*, for plaintiffs in error.

*T. Marshall* and *R. Woods*, for defendant in error.—Defendant had the right to revoke the power given to plaintiffs: Watson *v.* Bagaley, 2 Jones 164; Coffin *v.* Landis, 10 Wright 426; Story on Agency 605–615; Smyth *v.* Craig, 3 W. & S. 14.

[Tower *v.* O'Neil.]

The opinion of the court was delivered, January 3d 1871, by

WILLIAMS, J.—The only question presented by the assignment of error in this case is, whether the proposition of William Ward, one of the plaintiffs, to take the property himself, which he and his co-plaintiff were authorized to sell, amounted to or was equivalent to a sale of it under the power? The court below was of the opinion—and so instructed the jury—that the proposition could not be regarded as equivalent to a sale, because the instrument giving the power to sell, does not contemplate a sale to the plaintiffs, or either of them—and public policy denies the right of an agent, under such a power, to sell to himself. The plaintiffs contend that, under the stipulations contained in the power of sale, this instruction was erroneous, and that the rule of law which forbids an agent to sell to himself, or several joint agents to sell to one of their own number, has no application in this case. The plaintiffs were authorized to sell the property for seventy thousand dollars, and for their services in making the sale the defendant agreed to pay them a commission of two per cent., and the additional commission of all they might sell the property for above the sum of seventy thousand dollars. As the price which the defendant was to receive for the property was fixed and limited by the stipulations contained in the power of sale, irrespective of the amount for which it might be sold, the plaintiffs insist that, without any violation of the policy of the law, either of them had the right to purchase the property on the same terms they were authorized to sell it to a stranger—and that the offer of one of them to take it on these terms was equivalent to a sale under the power, and entitled them to the commission which the defendant agreed to allow them. But it seems to us that the question mainly discussed in the oral and printed argument, whether this case comes within the rule of law, which forbids an agent to sell to himself, does not properly arise under the evidence. The plaintiffs did not sell, nor did they undertake to sell the property to one of themselves. Ward's offer to take the property, whatever may be its legal effect, was made to the defendant; and it was made, as the evidence shows, not in execution of the power of sale, but in answer to the defendant's request to deliver it up. The offer was not pressed, and during the conference the plaintiffs said that if the defendant would extend the time (allowed for making the sale) thirty days longer they would give him three thousand dollars more than his contract price. The testimony of John Ward, the plaintiff's son, is that "after pleading and talking for some time, he (the defendant) said as quick as he got Mrs. Berry's interest he would put the property back in their hands for sale; then father told me to hand him the article, which I did. * * * O'Neil told father and Tower that they had a good deal of trouble with this thing, and he wanted to pay them as far as they went,

[Tower *v.* O'Neil.]

and paid them one hundred dollars apiece." The plaintiffs gave the defendant a receipt for the two hundred dollars "for services rendered." It is clear that the offer, under the circumstances in which it was made, cannot be regarded as equivalent to a sale of the property under the power. It was not so intended, or understood by the parties at the time it was made. There was no tender of the purchase-money, nor was anything done by the plaintiffs, or either of them, in pursuance of the offer, to put them in a position to treat it as equivalent to a sale under the power. On the contrary, they voluntarily surrendered the power of sale, and accepted the money tendered by the defendant as a compensation for the services they had rendered. But if the offer to take the property was made in execution of the power of sale, as contended by the plaintiffs, the defendant was under no obligation to accept it; and his refusal of it did not render him liable for the commissions he agreed to pay for selling the property. The relation between the parties, under the power of sale, was that of principal and agent, and it could not be changed into that of vendor and vendee without the consent of the defendant. Under no aspect of the case, then, were the plaintiffs entitled to recover anything beyond compensation for the services they rendered. The question as to the value of their services was fairly submitted to the jury with the instruction that if the plaintiffs were fraudulently induced to accept the amount tendered by the defendant under the assurance that the power was not revoked, but was to be restored, they should find such sum as they were entitled to receive over the amount paid them by the defendant. The court submitted the case to the jury with as favorable instructions for the plaintiffs as they had any right to ask, and if the jury did them any injustice by their verdict we have no power to correct it. Discovering no error in the record, we must affirm the judgment.

Judgment affirmed.